Your Honor, and may it please the court, my name is Jason Segalos and I represent Gracie Arellano Herrera. Gracie has lived in the United States since she was three days old. She has seven children who are U.S. citizens, and she was tortured by a cartel because she didn't want to work for it any longer. The same cartel she witnessed doing business with the Tijuana police. The IJ listened to Gracie's firsthand testimony and found her credible. Because of that, she granted Gracie deferral of removal, even though the IJ, in her own words, rarely grants relief in these types of cases. But the BIA reversed. This court should reinstate the IJ's initial grant of relief for two reasons. First, Gracie cannot safely relocate in Mexico. And second, Mexican officials would acquiesce to her torture. Because this court expressed an interest in relocation in its remand order last week, I'd like to start with that. The IJ, who regularly hears these types of cases, watched Gracie testify, found her credible, and based on her, quote, intimate knowledge of the cartel's reach and operations, made a factual finding that this was a large, well-known, far-reaching Mexican cartel. Thus, relocation was neither safe nor reasonable. Gracie's testimony provided firsthand accounts of how the cartel reacts to those who try and leave its business or who defy its orders or who steal its money. Gracie witnessed that they hunted down these people and tortured them. The same would happen to Gracie if she were to leave. The IJ found that it was particularly significant that this knowledge and fear were based on what she saw, quote, with her own eyes rather than on mere speculation. Additionally, I think that's right. And we know that she was only in Tijuana, correct? And so I guess that the challenge that I see on this idea to rely on her testimony that it was a large, well-known cartel is that it's not particularly clear. I'm not sure it's still clear why she didn't say who the cartel was, whether it was because she didn't want to say or because she didn't know who the cartel was. She testified both ways. But given that she wouldn't say or couldn't say who the cartel was, and given that she only operated in Tijuana, how do we know, how could we or the IJ rely on her testimony? I mean, I'm not saying it's not credible, but I'm just saying how would a person who isn't going to say who the cartel is, how would you know that it's a large cartel if you're not willing to say who it is? Yes, your honor. So first, naming the torturer is not a requirement under CAT. And while this issue of the name may implicate the size of the cartel, the IJ did find Gracie credible and then made a factual finding that this was a large, well-known, far-reaching Mexican cartel. And when a first-hand testimony is deemed to be credible, the regulations for CAT deem that that is sufficient to meet the applicant's burden of proof without secondary corroborating evidence. So while she was not able to, she was afraid to name the cartel and then provide specific evidence about that cartel's operations from secondary sources. That is unnecessary. So are you saying it has to be sufficient or are you saying it could be sufficient? Which one are you saying? It could be sufficient, your honor. Here, the IJ deemed that it was sufficient and made that factual finding about what was more likely than not to happen to Gracie were she forced to return to Mexico. Right, but somebody can be credible, right? Like the petitioner here, I think, was credible. But if they say something, you can also say, well, that's great, but I need something corroborating also. I mean, that's pretty blackletter law. So the question, I guess, is if they say, I think it's a large cartel or whatever what she testified to, if she isn't going to say who the cartel is, I don't know how we could know or how the IJ could know other than just to basically say, I believe her even though she's never been outside of Tijuana with this cartel. Yes, your honor, that's absolutely correct. However, the statutes and the subsequent regulations indicate that the judgment of whether or not more corroborating evidence is necessary is traditionally left to the IJ, to the fact finder. And here, the IJ deemed that this was sufficient testimony to meet Gracie's burden of proof. Therefore, it was up to the IJ to decide that. BIA cannot then disregard the IJ's factual findings and say, no, no, no, more testimony is necessary. First, the IJ must determine whether an applicant's credible testimony alone meets the applicant's burden of proof. And here, that burden of proof is just whether or not she was more likely or not to be tortured. And then it goes on to say, if it does, no corroborative evidence is necessary. So because the fact finder here made that finding, more corroborative evidence is not necessary. However, for Gracie's benefit, there is corroborating testimony in the country report. The country report specifically says that outside of Tijuana, there's not a haven from cartel violence. In fact, it says on page 212 of the record, quote, organized criminal groups were implicated in numerous killings, acting with impunity, and at times in league with corrupt federal, state, and local and security officials. And that is additional corroborative evidence on top of Gracie's firsthand testimony about what this cartel can do. She also- Mr. Gallo, on the point of corroborative evidence, if the IJ had felt more evidence was needed, then your client would have had to have been given notice, correct, of that? Yes, Your Honor. And was there any notice or suggestion that she needed to provide any additional corroborative evidence? No, Your Honor, not in the IJ's decision, no. However, the BIA then stepped in and said on the relocation and issue in four short sentences that it would have weighed the issues differently. It said that it would have accorded more weight to the possibility of relocation, whereas the IJ in her decision held differently. And this court has held under the clear error standard of review that if two permissible inferences are okay to be drawn from the record and the IJ picks one that the BIA would have picked differently, the BIA can't just say, well, we would have picked differently, so you're What's the significance of the testimony regarding the cartel contacting the family in the United States? Yes, Your Honor. The significance of that goes to, in the government's response brief, they make quite a big deal about Gracie only being able to name five states where the cartel operates. However, what the cartels reach into Los Angeles to take pictures of her demonstrate is that Gracie's list of states where she knows the cartel operates is not a limited, fully enumerated list of where the cartel has reached into. There's a distinction between your home base and where else you can go. And here, the fact that they reached into LA on multiple occasions demonstrates that willingness and ability to work outside of just Tijuana. Therefore, the potential that she might be able to relocate into one of the other Mexican states is not all that relevant. Counsel, that's an interesting argument because where does she want to relocate to in the United States if we were to, I assume she wants to go to LA where the cartel operates. So it makes sense to me that a cartel that might have only limited geographic reach in Mexico, since what it does is it runs drugs into the United States, would also have reach into the United States. So your argument that the fact that it reaches into LA means that it reaches into some rural parts of Mexico, it doesn't make sense to me that this cartel would have a reason to operate in these rural parts of Mexico. It has a reason to operate in LA, the very place she's asking us to put her. Yes, Your Honor. However, so first, does not require there to be a comparative safety analysis between where she would like to go in the United States and in Mexico. Second, is that just because they operate in Los Angeles doesn't demonstrate that they, in the fact that they're unlikely to operate in a rural area of Mexico, doesn't mean that they can't reach into one of those rural areas and make torture of Gracie more likely than not. Right. But counsel, I mean, this takes us back to, but the evidence of that here is basically, I mean, she had very thin stuff that she said to the IJ and the IJ took that and said, it's the large, well-known organized cartel without knowing who the cartel was, without being able to, it just seems, it seems, I understand that you give deference to the fact finding of the IJ, but here it seems like the IJ took something fairly slim by her and transformed it into, I think it was like literally one statement. I mean, she otherwise said it was in four states in Mexico, but then it took like one statement about it being well-known or nationwide or something like that and relied on that for that fact finding. And I don't know, it just seems like quite a stretch. Yes, your honor. However, this court and the BIA, at least they're supposed to, are supposed to give a large amount of deference to the IJ. So under this court's recent holding in Garra versus Barr, the clear error standard requires the BIA to explain why the IJ's inference based on statements provided by the applicant are either illogical, implausible, or not supported by permissible inferences from the record. And here they did not do so in the four short sentences they wrote. Counselor, let me ask you about... Go ahead, Judge Kendall. So in judging her credibility, the judge had to analyze the right? And the details that she gave, she even participated in some of these actions of violence herself or of covering it up, right? And so the details that she gave were more than simply saying, I hear they're a violent organization. She actually was a participant until she attempted to leave, right? Yes, your honor. Okay. And so when they're judging her is looking to see that. And then also she says that there's an enormous difference in the public corruption of the police force there, right? Yes, your honor. So when it comes to whether I'm going to stay in LA where they're reaching out to threaten versus where they could reach out and actually torture, murder her family if she were back there, right? That's a distinction as well, correct? Yes, your honor. And that all ties into the reasonableness of relocation as well, which also touches on Judge Van Dyke's last line of questioning. The fact that she has family ties in the United States, but not in Mexico. The fact that she has very little familiarity with Mexico outside of the one state where she was tortured are factors that go to the reasonability of relocation. In fact, family ties under this court's holding and Melkonian versus Ascra are quote, particularly significant. So counsel, let me ask you about that. Judge McEwen, did you have a question? No, I just wanted to point out that you may want to save some time for rebuttal, but let's first hear from Judge Van Dyke. And I don't want to take your rebuttal time, but this is to what you were just talking about. One of the things that I struggle with, this is a little bit of a weird case because this is somebody who's a citizen of a country, but has very little ties there other than the cartel ties she had in Tijuana. But most of the time when you're talking about the reasonableness of relocation, you've got somebody with really strong ties in one part or maybe a couple parts of a country, and you're saying, well, should we cause them to move to someplace completely different? Here she has no ties anywhere in that country. So it seems to me that relying on the unreasonableness or the fact that she doesn't have ties to that country, family or anything else, to say that she shouldn't relocate there is really just saying that she shouldn't be required to go back to the country she's a citizen of because she doesn't have any ties there. It seems weird that that's part of the relocation analysis here, given the weird facts in this case. Yes, Your Honor. However, this court very recently in Akison said that reasonableness is a part of the analysis. The BIA has implicitly admitted so in their order when they used reasonableness as the lens to evaluate whether or not relocation was feasible. And that's what this court has consistently held. And thank you for the save, Judge McEwen. I'd like to reserve the rest of my time for rebuttal. You may. Ms. Strokis? Good morning, Your Honors. May it please the court, Jessica Strokis on behalf of the United States Attorney General. Your Honors, this court should remand in light of intervening precedent in Xochitl Jaime's Akusong and Stimula v. Barr. Those cases represent changes in law that the agency should have the opportunity to address in the first instance under the ordinary remand rule. Essentially, under this court's own publication rules, those cases must have established, altered, modified, or clarified a rule of federal law, or the court must have recognized that the principles were generally not understood or applied correctly. Of A through G, none of the other rules for publication seem to be applicable to any of those cases. So at a minimum, we have three cases representing a clarification of the government acquiescence and internal relocation standards. And in fact, I would point out that Petitioner's Counsel just pointed to Akusong as holding. And I would say that I'm unaware of any other cases for the CAT regulation specifically other than Akusong where this court has held that reasonableness is part of the internal relocation inquiry specifically for CAT because that regulation does not textually include regulation, whereas the law for asylum and withholding removal does. So that the court would publish these three opinions is exceedingly instructive that it believes that these were changes in law or recognition that the principles of this court understood were not being applied generally. This court indicated that it's interested in internal relocation, but under the ordinary remand rule, the court really should not reach the merits of the internal relocation inquiry because of Xuxibahimes and Akusong. Ms. Brooks, if we were to determine, I mean, I don't know that you can infer something from publication other than the fact that the case is published. And of course, the case stands as precedent. But I know that in Mr. Scalos' response on the remand, he points out that really this whole issue of acquiescence is not really something new. I mean, we have now more cases on it. We may have more texture. But if we were to determine really simply as a matter of law that the BIA was incorrect, why would we need a remand? Well, Your Honors, under the ordinary remand, even if this court were to reach the merits, remand would be the ultimate result. The petitioner asks that this court grant cat protection. But unlike any of the cases where this court has remanded for a grant of cat protection, there are outstanding factual issues here. And that's just based on the procedural prospect of this case. The immigration judge granted cat protection and in so doing had to address all of the cat elements. More likely than not, rises to the level of torture of government acquiescence internal relocation, past torture and the like. The board in reviewing the immigration judge's decision under INSB Baghamasbah only had to address, only had to find clear error and address one of the immigration judge's findings. So we don't know outside of government acquiescence outside of internal relocation, the board's position on those elements. So this court, even if it decides to reach the merits, which I believe the ordinary remand rule would caution against, this court, the appropriate remedy would be remand for the board to apply, for the board to consider these new expansions of this case law, as well as potentially address the other cat elements. Let me make sure I understand because let's just leave acquiescence aside and focus on the relocation. And you've indicated that there's more factual finding that's needed there, but we have a host of factual findings already made by the IJ. So I'm having some trouble understanding that, what it is, the additional factual elements that you're talking about. So your honor, essentially the findings that I'm speaking about are in light of this court's new-ish precedent. So we have Tsushima Haimes, where the mandate issued on August 18th, and we have Akusong, where the mandate has not yet issued, and at this point, at this time, I'm unaware of whether the government has decided to speak panel on bond for bond for hearing. And I will also note that the certiorari clock is continuing to run for the government on Tsushima Haimes. But in those cases, the court instituted essentially three new principles that were, that are a minimum and expansion of Maldonado in this court's case on internal relocation. Especially in Tsushima Haimes, the court essentially, the court, so Maldonado states that the petitioner does not have a burden of demonstrating that internal relocation is impossible. That is the holding in Maldonado. In Tsushima Haimes, the court stated that that's, that is true, but also under its reading of the board's regulation, the board must assume impossibility of relocation, and the board must identify the specific area of the country of removal where it believes that the petitioner could relocate. And then again, in Akusong. Ms. Strokis, aren't you simply just rejecting the IJ's credibility finding, though? It's true, isn't it, under our case law, the Ninth Circuit, that the Wren says if the IJ finds the petitioner credible, you don't need more evidence, and they have more evidence because they have some of the reports and such, but isn't it really just a rejection of that credibility finding? No, Your Honor, I believe under the clear error review of the, that the board employs, the board looks at the immigration judge's findings, the factual findings, and can state that the immigration judge failed to look at certain factors or certain facts in the record, and I think that that's what the board did here. The board recognized that the immigration judge believed the testimony, it did not overturn the credibility finding, but that's all that the credibility finding is. Ms. Arellano-Herrera also testified that she only identified four states, out of a maximum of five, because Tijuana is in Baja California, Mexico, but four states in Mexico where she believes that the cartel operated. Certainly she did identify Los Angeles as a place, as Judge Van Dyke indicated, Los Angeles is a place that the cartel had reached, and, but then she also refused to or could not name the cartel, and the board pointed that out as a really relevant fact that it appeared the immigration judge did not consider, and in so doing properly applied its clear error review in saying, yes, you found her credible, but that does not necessarily, just because an applicant is credible does not necessarily mean that they should be granted relief and protection from removal. The applicant must also carry a burden, and I think what the board was doing here is saying that ultimately, when considering the evidence, the immigration judge clearly erred in relying only on this, as Judge Van Dyke pointed out, slim and vague testimony of the petitioner, and not on the other testimony, and the lack of evidence. So counsel, make sure I'm clear on this, because I'm fairly new on this court, but I seem to have run into this confusion, but I'm pretty sure that I've seen these cases, and it's black letter law that you can, since the Real ID Act, you can have somebody testify credibly, and that credible testimony can support their position, but they still haven't met their burden, but they still haven't met their burden by the time you weigh it with the other evidence, et cetera, and as Judge, I think McKeown said, sometimes that goes to cooperation, and then I think there's a rule that they have to ask for more, that IJ has to ask for more cooperation, but sometimes IJ just says a lot of evidence is in the record, and says you just haven't met your, it's not a cooperation issue, but you know, given what you've provided, the country reports, et cetera, and I think in this case, because you haven't said who the cartel is, that it's not enough, and you've also said that you only know it operates in these certain states, then you just haven't met your burden, so I think it's, am I right that there's a big difference between credible testimony and somebody not meeting their burden? They can credibly testify, but still not meet their burden. Correct, Your Honor, and in many cases, the petitioner or the applicant does credibly testify, and unfortunately, we see a lot of cases where bad things did happen to someone, but the ultimate burden still rely, is still on the applicant for reliever protection from removal, and in cat protection, that burden is more likely than not. So can I ask you, I wanted to ask, maybe I'll get a chance on rebuttal to ask opposing counsel here, but the other thing that's interesting here, is it does not appear like the IJ actually concluded that she couldn't safely relocate. I mean, it seems like, well, that the IJ implicitly concluded she could, otherwise why else would the IJ have weighed that, and the way that the IJ did? So it would be odd for me to think that the IJ had, the IJ didn't really explain all this, but it would be odd for the IJ to have concluded that there's nowhere in the country she could safely relocate to because of the nationwide reach, but that you could safely relocate, but that it didn't weigh in favor. So it seems to me like it's almost like an implicit, the IJ's implicit discounting of that testimony in her implicit finding that she could safely relocate, but that it didn't outweigh the other factors. Right, Your Honor, I believe that your reading of the immigration judge's decision is correct. The immigration judge did not say that she couldn't safely relocate, just that her ability to do so did not outweigh the other factors in assessing the likelihood of future torture. Let me ask you about the cartel issue, because I think we've bandied about a lot of language about what the IJ said, and because the IJ didn't say she didn't identify the cartel, and she didn't say, as the BIA said, she was unable to identify the cartel. The reason for not identifying the cartel had to do with the security, and so I think we can't forget that. But given that, and then given the IJ's wide familiarity, given the area where the IJ sits with drug cartels, IJ concluded that given this, given the reach of the cartel, at least as known on this one, that there was still this risk because of the widespread cartel power. So, let me just throw out a hypothetical. Even if the individual had said, well, the cartel at issue was the Sinaloa or the Jalisco cartel, that wouldn't really change the testimony here, and so I don't quite understand the focus on naming the cartel when it wasn't that she was unable, because she was able, she knows the cartel, but she was unwilling would be more accurate or reluctant. So, what would it matter, given the other findings here, if we had the name of a cartel? So, first, your honor, I do feel like it's necessary for me to point out that the record is very unclear on whether she knew or did not know the name of the cartel. She insisted several times and explains throughout her testimony, and on page 192, or I'm sorry, page 174, she said, and I quote, I never found out about the name, and it was only after the immigration judge kind of skeptically questioned her, saying you really didn't know the name of the cartel, and she said yes, and the immigration judge said, well, are you just afraid to say it, and she said yes to that question. She more or less contradicted herself in her testimony, and so I feel like I need to point out that it's not clear from the record whether she was unable or unwilling to identify the cartel, but country conditions evidence shows that there are numerous cartels in Mexico. Some are far-reaching, and some are not. For example, Los Zetas cartel in Xochitl, this court discussed that cartel in the country conditions evidence in that case that showed that there really wasn't a place in Mexico that that cartel could not operate, and it pointed out specifically that the board needed to point to that evidence in the record showing that there was a place that the Zetas cartel could not reach, but when you look, you can look at smaller cartels or newer forming cartels, there's lots of country conditions evidence that there are small cartels, small gangs that don't have this nationwide reach that some of these larger cartels have, and there's also evidence that there are cartels that are that are limited to certain areas, and quite frankly, Petitioner's testimony, even just looking at her testimony, kind of bears this out because she essentially testified that the cartels in Sinaloa, Michoacan, Chihuahua, Henare, and Baja California, all of which are concentrated along the northwestern area of Mexico. She provided no testimony, for example, that the cartel is in Yucatan or Chiapas in southeastern Mexico or Yucatan Peninsula, and by not identifying the cartel, we cannot look at record evidence and say the cartel is in all these other places. It just, it prevented us, and it prevented the immigration judge, it prevented the board from looking at the record evidence and saying that the cartel does indeed have large reach. We have to take her at her word where she only witnessed things that happened in Chihuahua and is thinking that they might be in these other states where she's not actually seen them operate in these other states. And I think that's between, you know, we know that cartels have certain pluses that they kind of allocate, but, and that's really for doing business, so to speak. But that doesn't mean that the cartels, as found here by the IJ, that they don't have a broader reach. That doesn't mean they're doing business, you know, in Chiapas or Yucatan or whatever, but that doesn't, that's different than having a broader reach, which seemed to be the issue here. And I didn't think the BIA really parsed that factual distinction. Maybe I missed something, and you can point me to the BIA's language. Your Honor, I think what the BIA was saying in pointing out that she didn't identify the cartel is that we simply cannot know. And I see that my time has expired. No, no, please. But I think that that's what the Board here was saying, is that we simply do not know. And hypothetically, on remand, in addressing this Court's new principles in Xuxi, Jua Jimenez, and in Akusang, the Board very well could say to the immigration judge, you need to consider, like, this testimony should have been considered. It should have been considered that she only identified a very small portion of Mexico where she believes that the cartel operated. And it should have been considered that she only witnessed the cartel's operations in Chihuahua, Mexico, which is right on the United States border, sandwiched right on the United States border. So, thank you for your time, Your Honors. This Court should remand to report. Why don't we put two minutes back on the clock for rebuttal, please? Your Honors, and may it please the Court, the IJ did conclude that all other factors, such as relocation, did not outweigh the high probability that it was more likely than not that Gracie would be tortured if forced to return to Mexico. She did consider... Counsel, is that a factual weighing, or is that, like, a legal weighing? It seems a little bit to me like it's an apples versus... So, how do you factually... You know, you can factually weigh things against each other all the time, but here you're talking about the various facts and the other factors, like the past torture, et cetera. How do you weigh that against... Well, you can relocate, but we don't think that's reasonable. It seems to me like, how can that be a factual weighing? Yes, Your Honor, this Court held clearly in Gariber's Bar back in March, quote, what is likely to happen to a petitioner if deported to a certain country is also a question of fact that the BIA may only reject for clear error. So, this Court has said very recently that these are factual findings. The IJ made this factual finding based off of Gracie's... Counsel, the BIA has said... I mean, you're reading that as talking... You're reading that as saying that you compare those factors that... And I'm not sure it has to be read that way, but if it does have to be read that way... And what you're saying is this Court has basically sort of overruled... Because the BIA has said the opposite, right? We know the BIA has clearly told IJs that these are... In the BIA decision, they say these are... This is matters of law, like how you weigh them is a matter of law, which normally it would be. So, you think we've overruled... Our Court has overruled that decision by the BIA? I don't believe so, Your Honor. And the BIA did. I believe it's on of the record acknowledged that what is likely to happen to a petitioner is a factual finding. They cited, I believe, a 2012 case, Rodriguez v. Holder, where the IJ, based on testimony provided by... Counsel, to be clear, the relocation analysis, there's an aspect of that that is what is to happen to the petitioner, right? Is the cartel have nationwide reach? Could they reach them here? But there's also another part, which it seems like that the IJ said, I don't think there's nationwide reach or something, because the IJ didn't seem to conclude that she could not relocate. Instead, the IJ said, I'm weighing that against the other stuff and saying that the fact that she could relocate doesn't outweigh that. That seems to be more of saying the reasonableness of it doesn't outweigh. And again, how is that a factual weighing? I don't... Because that's not... The reasonableness of relocating is not... Has nothing to do with the likelihood of torture, right? Yes, Your Honor. I see I've run out of time. May I... Oh no, please respond. Yes. So what is like... So the reasonableness of relocation is not a part of an applicant's burden of proof. An applicant's burden of proof is merely that it is more likely than not that they would be tortured if forced to return to their home country. Here, the IJ made a factual finding that that likelihood of torture was high, despite the potential for relocation. The IJ found, based on Gracie's intimate knowledge of the cartel operations, that if this cartel walked like a far-reaching Mexican cartel and talked like a far-reaching Mexican cartel, then it might just be one of these large, well-known, far-reaching Mexican cartels. This was a factual finding made by the IJ, and this court has consistently, in Rodriguez v. Holder, consistently gives deference to the IJ's factual findings over the BIA's findings. So it's tremendously unclear why exactly remanding to the board would help resolve any factual issues when an applicant is deemed credible, and that credible testimony by the fact-finder was deemed sufficient to meet her burden of proof to show that torture was more likely than not if they returned to Mexico. Based on factors such as past torture, which this court has held since 2005 in New Rivers-Gonzalez, is, quote, the principal factor for what is likely to happen to that applicant if they're forced to return. Therefore, this court does not need to remand. It can hold that substantial evidence supports the IJ's initial finding that torture is more likely than not to occur and reinstate Gracie's grant of deferral of removal. Thank you. Thank you to both counsel this morning. Also, a particular thanks to Petitioner's Counsel for participating in our pro bono program and also to the University of Georgia Law School. I know all of us, including government counsel, appreciate having a well-written legible brief to respond to. So thank you, Ms. Strokas, for appearing from wherever you may be. And Mr. Sigalos, the case just argued is submitted, Ariano Herrera v. Barr, and we are adjourned for the morning. This court for this session stands adjourned.
judges: McKeown, Kendall, Vandyke